**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

|  |  |
|---|---|
| JAY BONANZA BRILEY, | |
| Petitioner, | Civ. Action No. 16-5571 (RMB) |
| v. | **OPINION** |
| MR. ORTIZ, Warden, FCI Fort Dix, | |
| Respondent,[1] | |

**BUMB**, District Judge

On September 13, 2016, Petitioner Jay Bonanza Briley ("Briley"), incarcerated in FCI Fort Dix, in Fort Dix, New Jersey, filed a petition for writ of habeas corpus under 28 U.S.C. § 2241. (Pet., ECF No. 1.) Briley contends that Federal Bureau of Prisons ("BOP") staff improperly renewed a "Greater Security Management Variable" ("MGTV") and later improperly applied a "Public Safety Factor" ("PSF") to his security classification, precluding him from transferring to a minimum-

---

[1] The proper respondent to a petition under 28 U.S.C. § 2241 is the petitioner's immediate custodian. Rumsfeld v. Padilla, 542 U.S. 426, 434-35 (2004). Therefore, the Court will terminate the improper respondents from this action: Loretta Lynch, Mr. Kane, Director of Bureau of Prisons; Mr. Robinson, Unit Manager; and Mr. Olsen, Case Manager. The Court has also corrected the spelling of the warden's name in the caption, as provided in the Answer.

security prison camp. (Id., ¶¶14, 16, 19, 25-27.) Briley seeks immediate release to a residential reentry center ("RRC"), participation in the Veteran Outreach Treatment Program, and the Veterans Reentry Program. (Pet., ECF No. 1, ¶33.) He further seeks one year early release based on his RDAP treatment. (Id., ¶34.)[2] Briley filed five Addenda to his petition, submitting examples of the BOP removing other inmates' classification barriers to permit transfer to a camp, and establishing Briley's eligibility for participation in "Healthcare for Reentry Veterans (HCRV)." (Addenda, ECF Nos. 3, 5, 6, 7, 10.)

Respondent filed Respondent's Answer to Petition for a Writ of Habeas Corpus, opposing all relief. (Resp.'s Answer to Pet. for a Writ of Habeas Corpus ("Answer") ECF No. 12.) Briley filed a reply, followed by a motion for summary judgment (ECF No. 14), two motions to accept new evidence (ECF Nos. 18, 19), and two motions to compel. (ECF Nos. 21, 26.)[3] The first motion

---

[2] In his petition, Briley also sought money damages based on deprivation of transfer to a camp. (Pet., ECF No. 1, ¶35-36.) By Order dated September 23, 2016, this Court determined that Briley's petition for habeas relief could proceed, but he must file a separate civil rights action, after exhausting his administrative remedies, if he intends to seek money damages for a constitutional violation. (ECF No. 2 at 2.) Briley responded by letter to the Court, asking whether he must also exhaust his administrative remedies for his § 2241 petition, and if so, would the Court hold the petition in abeyance. (ECF No. 4.) The Court addresses this request in Section II.C.2 below.

[3] On April 17, 2017, Briley submitted a letter requesting that the Court hear his motions entered at Docket Entry Numbers 14,

2

to compel is for discovery[4] (ECF No. 21), and the second motion is to compel U.S. Probation Officer Kelly Smihal to amend Briley's Presentence Report, pursuant to Program Statement 5800.17. (ECF No. 26.) The new evidence Briley submitted includes the Part B Response to Remedy No. 886002-F2; a request to the Court for a copy of a filed motion (ECF No. 18); a copy of Program Statement 5800.17; and an inmate request to staff dated April 4, 2015. (ECF No. 19.)

For the reasons discussed below, the Court will dismiss the habeas petition and the pending motions.

---

21, and 25, on May 1, 2017, the date set for hearing by the Court. (ECF No. 28.) Briley misconstrued the docket entries as setting a hearing date. Each docket entry states "Unless otherwise directed by the Court, this motion will be decided on the papers and no appearances are required." The Court will decide these motions on the papers, without a hearing, pursuant to Federal Rule of Civil Procedure 78. The next day, Briley submitted an application for writ of habeas corpus ad testificandum, asking that he be brought before the Court to present his case. (ECF No. 30.) An evidentiary hearing is not required in this matter, and it will be decided on the papers. See Opara v. U.S., 423 F. App'x 116 (3d Cir. 2011) (evidentiary hearing was unnecessary where decision did not turn on factual disputes).

[4] In his motion to compel, Briley alleged it had been more than thirty days since he issued subpoenas to the National Park Service, and he had not received a response. (ECF No. 21.) Rule 6(a), (b) of the Rules Governing Section 2254 Cases in the United States District Courts, applicable to proceedings under 28 U.S.C. § 2241 through Rule 1(b), provides that discovery under the Federal Rules of Civil Procedure in a habeas proceeding may only be had upon leave of Court, after good cause is shown. Briley did not seek leave of Court to issue subpoenas to the National Park Service. In any event, the motion is dismissed as moot because Briley did not raise a cognizable habeas claim that is ripe for review.

3

I.  BACKGROUND

On January 12, 2012, Briley was arrested following an altercation with United States Park Police. United States v. Briley, 770 F.3d 267, 269-70 (4th Cir. 2014) ("Briley I"). The Fourth Circuit Court of Appeals stated the relevant facts:

> During the fracas on the driver's side of the car, Briley kicked [Officer] Brancato in the abdomen. Brancato then tried to loosen Briley's position in the vehicle by striking him on his side. As the effort to subdue Briley continued, Briley placed another kick—this time, harder—into Brancato's abdomen. Brancato later suffered from impairment of his pancreas and lost his gallbladder

Briley I, 770 F.3d at 270. A grand jury in the Eastern District of Virginia charged Briley with three counts of assaulting, obstructing and impeding a federal officer, in violation of 18 U.S.C. § 111, and one count of disorderly conduct – obscene acts, in violation of 36 C.F.R. § 2.34(a)(2). Id. Briley was convicted by a jury on all four counts. Id. at 271.

On October 22, 2013, the district court sentenced Briley to 78 months in prison, three years of supervised release, and restitution. (Declaration of Tara Moran ("Moran Decl."), ECF No. 3, Ex. 1 at 2); Briley I, 770 F.3d at 271. Following a hearing at which expert medical testimony was presented, the

sentencing court determined that "the trauma from Briley's kicks had caused Brancato's pancreatitis, which in turn had compelled the removal of his gallbladder." Id. Briley appealed, and the Fourth Circuit affirmed. Id. at 277.

In September 2014, while Briley was incarcerated at FCI Loretto, he filed a habeas petition under 28 U.S.C. § 2241 in the Western District of Pennsylvania. Briley v. Holder, Civ. Action No. 3:14-cv-0193, 2015 WL 926560, at *1 (W.D. Pa 2015) ("Briley II"). Briley challenged the BOP's application of a Greater Security Management Variable to his security classification and sought an order that would allow him to serve his sentence on home confinement or at a federal prison camp. Id. The district court
dismissed Briley's habeas petition for lack of subject matter jurisdiction. Id.

Briley appealed, and on January 14, 2016, a panel of the Third Circuit issued a non-precedential decision affirming the district court's decision. Briley v. Att. Gen. U.S., 632 F. App'x 84, 85 (3d Cir. 2016) ("Briley III"). The court held that "Briley's challenge to his custody classification is not cognizable in a § 2241 petition because he does not challenge the basic fact or duration of his imprisonment, which is the 'essence of habeas.'" Id. (citing Preiser v. Rodriguez, 411 U.S. 475, 484 (1973)). The court further held that "prisoners

5

have no constitutional right to a particular classification." Id. at 85 (citing Moody v. Daggett, 429 U.S. 78, 88 n. 9 (1976)).

Briley filed a number of unsuccessful post-conviction motions. United States v. Briley, 631 F. App'x 156, 156 (4th Cir. 2016) (per curiam) (affirming denial of motion for new trial and denying certificate of appealability with respect to § 2255 motion); Briley v. Lynch, Civ. Action No. 16-4274 (RMB), 2016 WL 4107691, at *2 (D.N.J. Aug. 1, 2016) (dismissing § 2241 petition for lack of jurisdiction where petitioner sought to challenge his conviction after denial of his § 2255 motion).

If Briley receives all available good conduct time, his projected release date is December 31, 2018. (Moran Decl., Ex. 1 at 2.) Inmates are eligible for twelve months of placement in a residential reentry center (or "RRC"), and they are typically considered for RRC placement 17 to 19 months before their projected release dates. (Id.) At the time Respondent filed its answer, Briley was more than two years from his projected release date. (Declaration of Frederick Olsen ("Olsen Decl."), ECF No. 12-2, ¶7.) Therefore, he had not been considered for RRC placement, nor was he eligible for immediate transfer to such a facility. (Id.) Furthermore, Briley never participated in the BOP's Residential Drug Abuse Program ("RDAP"); therefore

6

he is ineligible for the one-year early release incentive under 18 U.S.C. § 3621(e). (Id., ¶8; Attachment 4 at 1.)

II. DISCUSSION

A. BOP Custody Classification Policies

The BOP has the authority to designate the place of an inmate's confinement, and may transfer a prisoner from one facility to another at any time. 18 U.S.C. § 3621(b). In making placement determinations, the BOP must consider, among other factors, the resources of the facility contemplated, the nature and circumstances of the offense, and the characteristics of the prisoner. 18 U.S.C. § 3621(b)(1), (2), & (3).

BOP institutions are classified into five security levels: minimum, low, medium, high, and administrative. BOP Program Statement 5100.08, Inmate Security Designation and Custody Classification, Ch. 1 at 1-3, available at http://www.bop.gov/policy.) Before designating an inmate to an institution, the BOP assesses the inmate's particular security and program needs and certain administrative factors. (Id. at 2.) The BOP then designates an inmate to an institution based on these factors. (Id. at 3.)

To determine the level of security a particular inmate requires, the BOP calculates a security point score for the inmate and assigns any applicable "Management Variables" and "Public Safety Factors." (Id. at 2-3.) A Management Variable

7

"is required when placement has been made and/or maintained at an institution level inconsistent with the inmate's security score — a score which may not completely/accurately reflect his or her security needs." Id., Ch. 2 at 3. Application of a Management Variable to an inmate requires the review and approval of BOP's Designations and Sentence Computation Center ("DSCC") Administrator. (Id., Ch. 5, at 1.) A Management Variable of "Greater Security" may be applied to an inmate when BOP staff determines that the inmate represents a greater security risk than the assigned security level. (Id., Ch. 5 at 5.)

Public Safety Factors provide relevant factual information regarding the inmate's offense, sentence, criminal history, or institutional behavior that requires additional security measure to ensure safety of the public. (Id., Ch. 5 at 7.) An inmate whose current confinement falls within the Greatest Severity range, according to the Offense Severity Scale,[5] will be housed in at least a low-security-level institution unless the PSF has been waived. (Id.) In determining the severity of the inmate's offense, BOP staff must consider all offense behavior, not only the current offense. (Id., Ch. 6, at 3-4.) After assignment of Management Variables and Public Safety Factors, inmates are

---

[5] The "Offense Severity Scale" is located in Appendix A to Program Statement 5100.08.

assigned to an appropriate institution in accordance with the custody level classification. (Id., at 16.)

In this case, the DSCC applied a MGTV to Briley based on his offense of conviction, assaulting, obstructing and impeding a federal officer. (Olsen Decl. ¶3; Attachment 1 at 1); Briley II, 2015 WL 926560, at *1. Therefore, Briley was designated to a low-security institution (FCI Loretto in Pennsylvania), rather than a minimum-security camp. (Olsen Decl., ¶3.)

While designated to FCI Loretto, Briley's unit team submitted a request to renew the MGTV, and transfer him to another low-security institution, based on the results of a Special Investigatory Services ("SIS") investigation. (Olsen Decl., Attachment 1 at 1.) The DSCC continued the MGTV and approved the transfer. (Id.)

In November 2015, Briley was transferred from FCI Loretto to FCI Fort Dix, another low-security facility. (Olsen Decl. ¶4; Attachment 2 at 1.) During his program review at FCI Fort Dix, his unit team realized that Briley's instant offense conduct fell within the Greatest Severity range on the Offense Severity Scale in Program Statement 5100.08, which required BOP staff to apply a "Greatest Severity" PSF. (Id., ¶5.)

The Greatest Severity Scale lists "[a]ssault – serious bodily injury intended or permanent or life threatening bodily injury resulting" as one of the offenses for which a Greatest

9

Severity Public Safety Factor must be applied. P.S. 5100.08, App. A, at 1. According to Briley's Presentence Investigation Report ("PSR"), two officers sustained serious bodily injury due to his actions; one required a feeding tube and ultimately had his gallbladder removed as a result of the assault. (Olsen Decl. ¶6; see also Briley I, 770 F.3d at 270-71. The Unit Team submitted a request to the DSCC to apply a MGTV. (Olsen, Decl., ¶6.) Because the MGTV was no longer necessary in light of the PSF request,[6] BOP staff requested removal of Briley's MGTV. (Id.) The DSCC approved application of the PSF, and removed the MGTV. (Id.)

B. Exhaustion of Administrative Remedies

The BOP has a four-step process for federal inmates to exhaust administrative remedies. (Moran Decl. ¶3); 28 C.F.R. § 542.10 *et seq.* An inmate must first attempt to informally resolve his dispute with prison staff. 28 C.F.R. § 542.13. If this fails, the inmate may submit an administrative remedy request to the warden of his institution, within twenty days of the event or decision underlying the request. 28 C.F.R. § 542.14(a), (c).

If the administrative remedy request is denied, the inmate may file an appeal with the appropriate Regional Director,

---

[6] A PSF has no expiration date and will remain with an inmate throughout his incarceration unless waived by the DSCC. (Olsen Decl., ¶6.)

10

within twenty days of the date of the warden's response. 28 C.F.R. § 542.15(a). If the Regional Director denies the appeal, the inmate may appeal that decision to BOP's Central Office, General Counsel, within thirty days from the date of the Regional Director's response. Id. The administrative remedy process is not fully exhausted until an inmate's final appeal is considered by the Central Office. Id.

C. Analysis

1. Claims challenging security classification are not cognizable under 28 U.S.C. § 2241.

Briley previously filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 in the Western District of Pennsylvania, "seeking to challenge the Bureau of Prison's ("BOP") determination that a Greater Security Management Variable should be applied to his custody classification." Briley III, 632 F. App'x at 84. The district court dismissed for lack of jurisdiction, and a panel of the Third Circuit affirmed in a non-precedential opinion. Id. The Third Circuit explained:

> We agree with the District Court that Briley's challenge to his custody classification is not cognizable in a § 2241 petition because he does not challenge the basic fact or duration of his imprisonment, which is the "essence of habeas." See *Preiser v. Rodriguez*, 411 U.S. 475, 484, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). Nor does Briley's claim challenge the "execution" of his sentence within the narrow

> jurisdictional ambit described in *Woodall v. Federal Bureau of Prisons*, 432 F.3d 235, 241 (3d Cir.2005). *Woodall* held that a prisoner could bring a § 2241 petition challenging a BOP regulation that limited placement in a Community Corrections Center. We noted that "[c]arrying out a sentence through detention in [such a facility was] very different than carrying out a sentence in an ordinary penal institution." *Id.* at 243. Specifically, we determined that Woodall sought something well "more than a simple transfer," observing that his claims "crossed[ed] the line beyond a challenge to, for example, a garden variety prison transfer." *Id.* Here, we agree with the District Court that Briley's claims are much more akin to the "garden variety" custody levels that Woodall indicated were excluded from the scope of § 2241. Relatedly, we note, prisoners have no constitutional right to a particular classification. Moody v. Daggett, 429 U.S. 78, 88 n. 9, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976). Thus, the District Court correctly dismissed Briley's § 2241 petition. See Leamer v. Fauver, 288 F.3d 532, 542 (3d Cir. 2002) ("[W]hen the challenge is to a condition of confinement such that a finding in plaintiff's favor would not alter his sentence or undo his conviction, [a civil rights action] is appropriate.").

Id.

Accordingly, Briley's present claims that the Federal Bureau of Prisons ("BOP") staff improperly renewed a MGTV and improperly applied a PSF to his security classification, precluding him from transferring to a minimum-security prison camp, are not cognizable under 28 U.S.C. § 2241. See Mundo-Violante, 654 F. App'x 49, 51 (3d Cir. 2016) ("neither BOP policy nor the Due Process Clause gives a prisoner a liberty

interest in a particular housing location or custody level while under the jurisdiction of correctional authorities") (citations omitted); Briley III, 632 F. App'x at 85 (noting that inmates have no constitutional right to a particular security classification); Anguiano-Sanchez v. Zickefoose, No. 12-0477 (RMB), 2013 WL 356012, at *3 (D.N.J. Jan. 29, 2013) (same); Ford v. Hughes, No. 11-7029 (RMB), 2012 WL 3228714, at *3 (D.N.J. Aug. 3, 2012) (same). Briley's claims challenging the renewal of the MGTV and PSF are dismissed.

> 2. Briley's Failure to Exhaust Administrative Remedies of RRC and RDAP Claims Warrants Dismissal Without Prejudice

A federal inmate must first exhaust his administrative remedies before seeking habeas relief pursuant to 28 U.S.C. § 2241. Moscato v. Fed. Bureau of Prisons, 98 F.3d 757, 760-62 (3d Cir. 1996). The Third Circuit requires exhaustion for three reasons:

> (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy.

Id. at 761-62 (citations omitted).

Respondent asserts Briley has not sought an administrative remedy for his claims concerning RRC placement or early release

eligibility under RDAP. (Moran Decl., ¶6.) Briley concedes that he failed to exhaust administrative remedies, and seeks an abeyance of the petition. See supra n. 2.

An abeyance is inappropriate because it frustrates the purposes of conserving judicial time when an agency might grant the relief sought through the administrative remedy procedure. Therefore, the Court will dismiss the unexhausted claims concerning RRC placement and RDAP early release without prejudice to Briley raising his claims after he has exhausted his remedies.

III. CONCLUSION

For the reasons discussed above, Briley's application for a writ of habeas corpus ad testificandum is denied (ECF No. 30); Briley's petition under 28 U.S.C. § 2241 is dismissed; his claims challenging the BOP's renewal of a MGTV and assignment of a PSF are dismissed for lack of jurisdiction; his claims for RRC placement and early release for RDAP treatment are dismissed without prejudice. Briley's motion to compel discovery (ECF No. 21), motion to compel amendment of his PSR (ECF No. 26), motions to accept new evidence (18, 19), and motion for summary judgment (ECF No. 14) are dismissed as moot. See Brown v. Philadelphia Housing Authority, 350 F.3d 338, 343 (3d Cir. 2003) ("[m]ootness has two aspects: (1) the issues presented are no longer live, or

(2) the parties lack a cognizable interest in the outcome") (citations omitted).

An appropriate Order follows.

Dated: April 21, 2017.

                                              s/Renée Marie Bumb
                                              **Renée Marie Bumb**
                                              **United States District Judge**